## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

**BRANDON RUFFIN (#573976)**                                              **CIVIL ACTION**

**VERSUS**

                                                                    **17-655-SDD-RLB**

**MICHAEL JACK, ET AL .**

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U. S. District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein. Failure to file written objections to the proposed findings, conclusions and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on January 15, 2019.

                                                   **RICHARD L. BOURGEOIS, JR.**
                                                   **UNITED STATES MAGISTRATE JUDGE**

# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**BRANDON RUFFIN (#573976)**                                       **CIVIL ACTION**

**VERSUS**

**MICHAEL JACK, ET AL.**                                           **17-655-SDD-RLB**

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Before the Court is the Motion for Summary Judgment filed on behalf of defendants Assistant Warden Barrett Boeker, Col. Randall Robertson, Major Nicholas Sanders, Cpt. Herman Holmes, and Assistant Warden Jonathan London (R. Doc. 20). The Motion is not opposed.

*Pro se* plaintiff, an inmate currently confined at the David Wade Correctional Center ("DWCC"), Homer, Louisiana, filed this action pursuant to 42 U.S.C. § 1983 against Assistant Warden Barrett Boeker, Col. Randall Robertson, Major Nicholas Sanders, Capt. Herman Holmes. Assistant Warden Jonathan London, Cpt. Michael Jack, and the Tactical Unit at Louisiana State Penitentiary complaining that his constitutional rights were violated due to the use of excessive force, failure to protect him from the use of excessive force, and deliberate indifference to his serious medical needs.[1] Defendants Boeker, Robertson, Sanders, Holmes, and London move for summary judgment relying upon the pleadings, a Statement of Undisputed Facts, the Affidavit of Assistant Warden Barret Boeker, and certified copies of a Disciplinary

---

[1] A review of the record reveals that defendants Capt. Michael Jack and the Tactical Unit have not been served because defendant Jack was no longer employed by the Department of Corrections and because the names of the members of the Tactical Unit were needed for service to be accepted by the Department of Corrections. *See* R. Doc. 14. Pursuant to the requirements of Rule 4(m) of the Federal Rules of Civil Procedure, failure to serve a defendant within 90 days of commencement of an action is cause for dismissal of that defendant from the proceeding. Although a *pro se* plaintiff may rely on service by the U.S. Marshal, he may not remain silent and do nothing to effectuate such service and should attempt to remedy any defects of which he has knowledge. The plaintiff has been informed of the lack of service and has failed to act to direct service on these defendants. *See* R. Doc. 14. It is appropriate, therefore, that the plaintiff's claims asserted against Capt. Michael Jack and the Tactical Unit be dismissed, without prejudice, for failure of the plaintiff to effect timely service upon them.

Board Report, Disciplinary Hearing Audio, the plaintiff's penitent Administrative Remedy Procedure, and the plaintiff's medical records.

Despite an extension of time to do so, the plaintiff has not opposed the instant motion. *See* R. Doc. 25. Additionally, while the plaintiff's allegations in his unverified Complaint provide context to the evidence provided by the defendants, those allegations are not sufficient to survive a properly supported motion for summary judgment.[2]

Pursuant to well-established legal principles, summary judgment is appropriate where there is no genuine disputed issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Rule 56, Federal Rules of Civil Procedure. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). A party moving for summary judgment must inform the Court of the basis for the motion and identify those portions of the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, that show that there is no such genuine issue of material fact. *Celotex Corp. v. Catrett, supra*, 477 U.S. at 323. If the moving party carries its burden of proof under Rule 56, the opposing party must direct the Court's attention to specific evidence in the record which demonstrates that the non-moving party can satisfy a reasonable jury that it is entitled to a verdict in its favor. *Anderson v. Liberty Lobby, Inc., supra*, 477 U.S. at 248. This burden is not satisfied by some metaphysical doubt as to alleged material facts, by unsworn and unsubstantiated assertions, by conclusory allegations, or by a mere scintilla of evidence. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). Rather, Rule 56 mandates that summary

---

[2] His complaint is unverified, and thus it is not competent summary judgment evidence. Fed. Rule Civ. P. 56(c)(1); *King v. Dogan*, 31 F.3d 344, 346 (5th Cir.1994) (verified complaints may potentially be considered as competent summary judgment evidence to the extent the complaint comports with the affidavit requirements of Rule 56). Rule 56, in turn, requires that affidavits "must be made on personal knowledge, set out facts that would be admissible in evidence," and make the averral under penalty of perjury. Fed. Rule Civ. P. 56(c)(4); *King*, 31 F.3d at 346. The plaintiff's Complaint contains no such averral.

judgment be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett, supra*, 477 U.S. at 323. Summary judgment is appropriate in any case where the evidence is so weak or tenuous on essential facts that the evidence could not support a judgment in favor of the non-moving party. *Little v. Liquid Air Corp., supra*, 37 F.3d at 1075. In resolving a motion for summary judgment, the Court must review the facts and inferences in the light most favorable to the non-moving party, and the Court may not evaluate the credibility of witnesses, weigh the evidence, or resolve factual disputes. *International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991).

In his Complaint as amended, the plaintiff alleges the following: On October 12, 2016, defendant Boeker approached the plaintiff's cell and asked the plaintiff if he was the inmate who had thrown human waste on Col. Trent Barton. The plaintiff replied, "Do you feel like I threw it?" Defendant Boeker then ordered the plaintiff to remove his clothing, bend over and expose his anus. The plaintiff refused to comply and defendant Boeker repeated the order. When the plaintiff again refused to comply, defendant Boeker stated, "I don't know what wrong with you niggers over here shitting down the colonel and officers. But today is ya'lls day." Defendant Boeker then spit on the plaintiff's face. In response, the plaintiff retrieved a cup of coffee and threw it towards defendant Boeker, striking him in the arm.

Defendant Boeker ordered Cpt. Michael Jack to spray the plaintiff with a chemical agent. Jack then sprayed the plaintiff with the entire can of chemical agent without first asking the plaintiff to come to the bars to be restrained. Defendants Sanders, Robertson, Holmes, and London were present but failed to intervene. The plaintiff immediately complained to defendants Boeker, Sanders, Holmes, Robertson and London, and Jack, of difficulty breathing, and burning of his eyes, face, and body. The plaintiff pleaded with the defendants for a shower.

The Tactical Unit then arrived, entered the plaintiff's cell, wrestled the plaintiff to the floor, placed an electronic capture shield over him, and shocked the plaintiff. Members of the unit also beat the plaintiff's shins with batons, stomped and kicked the plaintiff in the stomach and ribs, and slapped his face. The plaintiff's clothes were stripped off, and the plaintiff was placed in four-point restraints. The Tactical Unit then exited the cell. Defendants Jack, Boeker, Sanders, Holmes, Robertson, and London were present but did not intervene.

For the remainder of the day, the plaintiff remained in the four-point restraints. He requested a shower but was informed that only a supervisor could remove the plaintiff's restraints. The plaintiff was not let out of the restraints to decontaminate, eat, or use the restroom. Defendants Sanders, Holmes, and Jack, made routine rounds but never offered the plaintiff a shower. The plaintiff requested medical care and for his cell to be cleaned but was ignored by Sanders, Holmes, and Jack.

Upon release from the four-point restraints on October 13, 2016, the plaintiff was not examined by medical personnel. While restrained the plaintiff did not receive notice of any disciplinary violation and did not receive a disciplinary report.

Defendants Boeker, Robertson, Sanders, Holmes, and London first seek dismissal of the plaintiff's claims against them in their official capacity on jurisdictional grounds. In this regard, the defendants are correct that § 1983 does not provide a federal forum for a litigant who seeks monetary damages against either a state or its officials acting in their official capacities, specifically because these officials are not seen to be "persons" within the meaning of § 1983. *Will v. Michigan Department of State Police*, 491 U.S. 58, 71 (1989). In addition, in *Hafer v. Melo,* 502 U.S. 21 (1991), the United States Supreme Court addressed the distinction between official capacity and individual capacity lawsuits and made clear that a suit against a state official in an official capacity for monetary damages is treated as a suit against the state and is

therefore barred by the Eleventh Amendment. *Id*. at 25. Accordingly, the plaintiff's claims asserted against the moving defendants in their official capacity, for monetary damages, are subject to dismissal. In contrast, the plaintiff's claims for monetary damages asserted against these defendants in their individual capacities remain viable because a claim against a state official in an individual capacity, seeking to impose personal liability for actions taken under color of state law, is not treated as a suit against the state. *Id*. at 29. Of course, the plaintiff must prove a deprivation of a constitutional right to obtain any relief.

With regards to the plaintiff's claims against them in their individual capacities, the moving defendants assert that they are entitled to qualified immunity in connection with the plaintiff's claims. Specifically, the defendants contend that the plaintiff's allegations and evidentiary showing fail to show the existence of a genuine issue of disputed fact relative to any alleged violation of the plaintiff's constitutional rights.

The qualified immunity defense is a familiar one and, employing a two-step process, operates to protect public officials who are performing discretionary tasks. *Huff v. Crites*, 473 F. App'x. 398 (5th Cir. 2012). As enunciated in *Saucier v. Katz*, 533 U.S. 194 (2001), the first step in the analysis is to consider whether, taking the facts as alleged in the light most favorable to the plaintiff, the defendant's conduct violated the plaintiff's constitutional rights. *Id.* at 201. Second, the district court looks to whether the rights allegedly violated were clearly established. *Id.* This inquiry, the Court stated, is undertaken in light of the specific context of the case, not as a broad, general proposition. *Id.* The relevant, dispositive inquiry in determining whether a constitutional right was clearly established is whether it would have been clear to a reasonable state official that his conduct was unlawful in the situation which he confronted. *Id.* at 202. The assertion of the qualified immunity defense alters the summary judgment burden of proof. *Michalik v. Hermann*, 422 F.3d 252, 262 (5th Cir. 2005). Once a defendant pleads qualified

immunity, the burden shifts to the plaintiff, who "must rebut the defense by establishing that the official's allegedly wrongful conduct violated clearly established law and that genuine issues of material fact exist regarding the reasonableness of the official's conduct." *Gates v. Texas Department of Protective and Regulatory Services*, 537 F.3d 404, 419 (5th Cir. 2008), *citing Michalik v. Hermann, supra*, 422 F.3d at 262.[3]

Undertaking the qualified immunity analysis with respect to the plaintiff's claims, the Court finds that defendants' motion for summary judgment should be granted. Specifically, the Court finds that there are no disputed questions of material fact regarding the plaintiff's claims of use of excessive force, failure to protect from use of excessive force, and deliberate indifference to the plaintiff's serious medical needs.

Turning first to the plaintiff's claim of use of excessive force, a use of force by a prison official is excessive and violates the Eighth Amendment to the United States Constitution only when such force is applied maliciously and sadistically for the very purpose of causing harm rather than in a good faith effort to maintain or restore discipline. *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010), *quoting Hudson v. McMillian*, 503 U.S. 1, 7 (1992). Not every malicious or malevolent action by a prison guard gives rise to a federal cause of action, however, and the Eighth Amendment's prohibition against cruel and unusual punishment necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that such force is not of a sort "repugnant to the conscience of mankind." *Hudson v. McMillian, supra*, 503 U.S. at 10, *quoting Whitley v. Albers*, 475 U.S. 312, 327 (1986). The fact that an inmate may have sustained only minimal injury, however, does not end the inquiry, and an inmate who has been subjected to

---

[3] The United States Supreme Court has held that rigid chronological adherence to the *Saucier* two-step methodology is not mandatory. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). Although the *Saucier* methodology will be "often beneficial", the Court in *Pearson* leaves to the lower courts discretion as to the order in which they may wish to address the two prongs of the qualified immunity analysis. *Id.*

gratuitous force by prison guards "does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." *Wilkins v. Gaddy, supra*, 559 U.S. at 38. Notwithstanding, the Court may consider the extent of injury, if any, as potentially relevant to a determination whether an alleged use of force was excessive under the circumstances. In addition, other factors that may be considered in determining whether an alleged use of force has been excessive include the perceived need for the application of force, the relationship between the need for force and the amount of force utilized, the threat reasonably perceived by prison officials, and any efforts made to temper the severity of a forceful response. *Hudson v. McMillian, supra*, 503 U.S. at 7.

Applying the foregoing standard, the Court finds that the plaintiff has failed to come forward with evidence sufficient to support a finding that there are disputed questions of material fact in this case regarding the objective reasonableness of use of force on October 12, 2016.

The summary judgment evidence, in the form of competent documentary evidence and a sworn affidavit, shows that on October 12, 2016 at approximately 9:00 a.m., defendant Boeker was called to the plaintiff's tier to assist Capt. Jack with shakedowns. While conducting shakedowns, the plaintiff threw a liquid substance and/or feces on defendant Boeker and began shouting profanities. The plaintiff was given several direct orders to stop yelling and come to the bars to be restrained. The plaintiff refused all orders given. To stop the disturbance, defendant Boeker administered a chemical agent into the plaintiff's cell. The plaintiff continued to refuse all orders to come to the bars and be restrained. A cell extraction team was called to remove the plaintiff from his cell. The plaintiff was offered an opportunity to decontaminate in the shower. *See* R. Docs. 20-3 and 20-5, p. 15.

At 9:30 a.m., the plaintiff was seen by medical personnel at the request of security. *See* R. Doc. 20-5, p. 43. At 2:40 p.m., the plaintiff was placed in four-point restraints. At 3:05 p.m.,

the plaintiff was seen by medical personnel.  *See* R. Doc. 20-5, p. 44.  The plaintiff was again examined by medical personal at 5:35 p.m., and again on October 13, 2016 at 5:00 a.m.  *See* R. Docs. 20-5, p. 45 and 47.  All exams were unremarkable.  The plaintiff was observed every 15 minutes by security until the restraints were removed on October 13, 2016 at 8:00 a.m.  During the time the plaintiff was restrained he was given opportunities to eat, drink, and use the restroom.  *See* R. Doc. 20-5, p. 34-38.

The defendants assert that, in response to the plaintiff's refusals to cease the disturbance, defendant Boeker utilized minimal and necessary force to maintain discipline.  The question becomes, therefore, whether defendant Boeker's use of force in response to the plaintiff's act of refusal was objectively reasonable or whether it instead rose to the level of excessive force prohibited by the Eighth Amendment.  Ultimately, the Court concludes that the plaintiff has failed to present evidence sufficient to refute the defendants' showing and to support a finding of excessive force in this case.

Interpreting the competent, summary judgment evidence in the light most favorable to the non-mover, it appears that the plaintiff repeatedly refused to comply with defendant Boeker's direct verbal orders to cease the disturbance.  The defendant then employed some degree of force to gain compliance and maintain discipline.  The plaintiff's actions also jeopardized the good order of the institution, and it was not objectively unreasonable for defendant Boeker to respond by spraying the plaintiff with a chemical agent after the plaintiff's repeated refusals to comply with defendant Boeker's orders.  Nor was it unreasonable to employ the use of the cell extraction team when the plaintiff continued to refuse to come to the bars to be restrained after being sprayed with a chemical agent.

In the context of excessive force claims, the courts have long recognized that great deference is due to prison officials who are dealing with potentially dangerous situations, and

"prison officials often must make their decisions 'in haste, under pressure, and frequently without the luxury of a second chance.'" *Lawrence v. Knighten*, 30 F.3d 1490, *2 (5th Cir. 1994). Accordingly, in the context of the situation that was presented, the Court is unable to conclude that defendant Boeker's action in using some degree of force was objectively unreasonable or was undertaken "for the very purpose of causing harm rather than in a good faith effort to maintain or restore discipline." *Wilkins v. Gaddy*, *supra,* 559 U.S. at 37.

Further, although the plaintiff asserts that the defendants utilized more force than was justified under the circumstances, the plaintiff's medical records do not support this contention. Specifically, the plaintiff alleges that he was shocked, beat by batons, stomped, kicked, and slapped by the Tactical Unit; however, the plaintiff was examined by medical personnel several times and no injuries were noted. As such, there is no objective evidence of any injury resulting from defendant Boeker's use of a chemical agent on the plaintiff or any actions taken by the Tactical Unit. As noted above, while the existence of minimal injuries does not alone warrant the rejection of a claim of excessive force, the minimal nature of a claimant's injuries may be relevant to the question whether the use of force was reasonable or excessive under the circumstances presented. In addition, when the objective findings noted in an inmate's medical records reflect no evidence of injuries consistent with his allegations, the Court is authorized to conclude that the inmate's allegations are implausible. *See Wilburn v. Shane*, 193 F.3d 517 (5th Cir. 1999), *citing Wesson v. Oglesby*, 910 F.2d 278, 281-82 (5th Cir. 1990).

Based on the foregoing, the Court concludes that the plaintiff has not presented sufficient evidence to contravene the evidence presented by the defendants in connection with their motion, much less evidence sufficient to meet the plaintiff's burden of proof, to rebut the defendants' assertion of qualified immunity, and to show the existence of a genuine issue of disputed fact regarding whether the defendants utilized unreasonable or constitutionally excessive force on the

date in question.  *See Gates v. Texas Department of Protective and Regulatory Services, supra*, 537 F.3d at 419 (recognizing that the plaintiff bears the burden of rebutting a defendant's assertion of qualified immunity on motion for summary judgment).  The competent evidence adduced by the defendants, supported by an affidavit and documentation, reflects that the use of force against the plaintiff on October 12, 2016 was objectively reasonable in light of the situation presented and was not for the sole purpose of causing harm but, instead, was for the purpose of maintaining discipline in response to the plaintiff's repeated refusals to obey the direct orders of defendant Boeker to cease the disturbance.  It is also clear in this case that the plaintiff was seen by medical personnel after the brief application of force and thereafter and was not noted to exhibit any injuries consistent with his allegations.

With regards to the plaintiff's claim for failure to protect from the use of excessive force, a defendant security officer may be found responsible for failure to intervene and take reasonable measures to protect an inmate from another officer's excessive use of force. *See Whitley v. Hanna,* 726 F.3d 631, 646 (5th Cir. 2013) *citing Hale v. Townley,* 45 F.3d 914, 916 (5th Cir. 1995).  However, the plaintiff has failed to provide competent summary judgment evidence showing that excessive force was used against him.

Turning next to the plaintiff's claim of deliberate indifference to his serious medical needs, a prison official violates the Eighth Amendment's prohibition of cruel and unusual punishment if the official shows deliberate indifference to a prisoner's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 103–06 (1976).  The official must "know[ ] of and disregard[ ] an excessive risk to inmate health or safety" and "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists".  *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).  The official also must draw that inference.  *Id*.

Failed treatments, negligence, and medical malpractice are insufficient to give rise to a claim of deliberate indifference. *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006). A prisoner who disagrees with the course of treatment or alleges that he should have received further treatment also does not raise a claim of deliberate indifference. *Domino v. Tex. Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001). Instead, an inmate must show that prison officials denied him treatment, purposefully provided him improper treatment, or ignored his medical complaints. *Id*. A delay in treatment may violate the Eighth Amendment if the delay was the result of the prison official's deliberate indifference and substantial harm—including suffering—occurred during the delay. *Easter v. Powell*, 467 F.3d 459, 464–65 (5th Cir. 2006).

As previously noted, the competent summary judgment evidence submitted by the defendants establishes that the plaintiff was examined by medical staff after being sprayed with a chemical agent and while restrained in four-point restraints. All exams were unremarkable, and the plaintiff did not make any request for additional medical assistance. *See* R. Doc. 20-5, p. 18. Additionally, the plaintiff was allowed opportunities to eat, drink, and use the restroom while restrained. As such, the competent summary judgment evidence does not reflect that the plaintiff was denied treatment, purposefully provided improper treatment, or that his medical complaints were ignored.

To the extent the plaintiff is asserting a claim regarding a violation of his due process rights in connection with his disciplinary proceedings, an inmate does not have a constitutional right to have his prison disciplinary or administrative proceedings properly investigated, handled, or favorably resolved. *Mahogany v. Miller,* 252 F. App'x. 593, 595 (5th Cir. 2007), and there is no procedural due process right inherent in such a claim. As stated by the United States Court of Appeal for the Fifth Circuit in *Geiger v. Jowers,* 404 F.3d 371 (5th Cir. 2005) (in the context of the handling of an administrative grievance):

> Insofar as [the plaintiff] seeks relief regarding an alleged violation of his due process rights resulting from the prison grievance procedures, the district court did not err in dismissing his claim as frivolous…[The plaintiff] does not have a federally protected liberty interest in having these grievances resolved to his satisfaction.  As he relies on legally nonexistent interest, any alleged due process violation arising from the alleged failure to investigate his grievances is indisputably meritless.  *Id*. at 373-74.

This conclusion is equally applicable in the context of prison disciplinary proceedings. *See, e.g., Sanchez v. Grounds,* 2014 WL 1049164, *2 (E.D. Tex. Mar. 14, 2014) (finding that an inmate's claim regarding a failure to conduct a "proper investigation" of a disciplinary charge "did not amount to a constitutional deprivation");  and *Jackson v. Mizell,* 2009 WL 1792774, *7 n.11 (E.D. La. June 23, 2009) (noting that "the Court fails to see how a prisoner could ever state a cognizable claim alleging an inadequate disciplinary investigation").

 Further, the failure of prison officials to follow prison rules or regulations does not amount to a violation of the plaintiff's constitutional rights.  *Jackson v. Cain*, 864 F.3d 1235, 1252 (5th Cir. 1989).  Nor does this Court sit as some form of an appellate court to review errors made by state tribunals that do not affect an inmate's constitutional rights.  *See, e.g., Coleman v. Director, TDCJ-CID,* 2009 WL 56947, *2 (E.D. Tex. Jan. 7, 2009) (noting, in the context of an inmate's habeas corpus proceeding arising out of a prison disciplinary proceeding, that "[i]n the course of reviewing state proceedings, a federal court does not sit as a super state appellate court.").

Moreover, in *Sandin v. Conner*, 515 U.S. 472 (1995), the Supreme Court noted that in some rare situations, an inmate may be entitled to procedural Due Process when state action exceeds the sentence in such an unexpected way as to give rise to protection by the Due Process Clause of its own force.  Normally, however, the Due Process Clause, itself, does not afford an inmate a protected liberty interest that would entitle him to the procedural protections set forth in *Wolff v. McDonnell*, 418 U.S. 539 (1974).  It is only those restrictions that impose "atypical and

significant hardship[s] ... in relation to the ordinary incidents of prison life" that will invoke the prospect of state-created liberty interests. *Wilkinson v. Austin*, 545 U.S. 209, 222–23 (2005).

Thus, while *Sandin* made it clear that punishments that impact upon the duration of confinement, or which exceed the sentence in an unexpected manner, or that impose "atypical and significant hardship[s] ... in relation to the ordinary incidents of prison life" will give rise to the protection afforded by the Due Process Clause, more routine disciplinary action will not invoke this constitutional protection. *Sandin,* 515 U.S. at 484.

In the instant case, the plaintiff refused to sign the disciplinary reports issued on October 12, 2016 which would have provided him notice of the disciplinary charges. After pleading guilty, the plaintiff was sentenced to a custody status change and 12 weeks loss of canteen privileges. This punishment does not amount to disciplinary action that infringes upon a constitutionally protected liberty interest which would invoke the protection of the Due Process Clause of the Fourteenth Amendment. *See Dickerson v. Cain,* 241 F. App'x. 193 (5th Cir. 2007) (holding that the plaintiff failed to show that placement in Camp J at LSP presents "an atypical or significant hardship beyond the ordinary incidents of prison life"). The plaintiff's claim here likewise fails to make such a showing. See R. Doc. 20-5, p. 4-5.

Despite notice and an opportunity to appear, the plaintiff has not come forward with any competent summary judgment evidence in opposition to the defendants' Motion for Summary Judgment or to the documentary evidence produced in support thereof. Accordingly, there is nothing before the Court which tends to dispute the defendants' assertions. Based upon the plaintiff's failure in this case to designate specific evidence in the record of sufficient caliber and quantity to create a genuine issue for trial, the Court concludes that the defendants' Motion is well-taken and that, on the record before the Court, the defendants are entitled to summary judgment as a matter of law.

Finally, to the extent that the plaintiff's allegations may be interpreted as seeking to invoke the supplemental jurisdiction of this Court over potential state law claims, a district court is authorized to decline the exercise of supplemental jurisdiction if a plaintiff's state law claims raise novel or complex issues of state law, if the claims would substantially predominate over the claims over which the Court has original jurisdiction, if the Court has dismissed all claims over which it had original jurisdiction, or for other compelling reasons.  28 U.S.C. § 1367.  In the instant case, upon a consideration of the claims remaining before the Court, the Court further recommends that supplemental jurisdiction be declined in connection with the plaintiff's potential state law claims.

## RECOMMENDATION

It is recommended that the plaintiff's claims asserted against Cpt. Michael Jack and the Tactical Unit be dismissed, without prejudice, for failure of the plaintiff to effect timely service upon them.  It is further recommended that the Motion for Summary Judgment (R. Doc. 20), be granted, and that this matter be dismissed with prejudice.  It is further recommended that the Court decline the exercise of supplemental jurisdiction in connection with any potential state law claims, and that this action be dismissed.

Signed in Baton Rouge, Louisiana, on January 15, 2019.

                                                        **RICHARD L. BOURGEOIS, JR.**
                                                        **UNITED STATES MAGISTRATE JUDGE**